165 P.3d 194

**SAVE OUR VALLEY ASSOCIATION, a committee of homeowners and landowners; Frank Gagliardi, an individual, Chairman of Save Our Valley Association and an affected homeowner/landowner, Plaintiffs/Appellants,**

v.

**ARIZONA CORPORATION COMMISSION, Defendant/Appellee,**

and

**Salt River Project, Real Party in Interest/Appellee.**

No. 1 CA–CV 06–0248.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 16, 2007.

As Amended Sept. 14, 2007.

Law Offices of David William West PC By David W. West, Maricopa, Attorney for Plaintiffs/Appellants.

Arizona Corporation Commission Legal Division By Janet F. Wagner, Linda Fisher, Janice M. Alward, Phoenix, Attorneys for Defendant/Appellee.

Jennings Strouss & Salmon PLC By Kenneth C. Sundlof, Jr., Phoenix, Attorneys for Real Party in Interest/Appellee.

Salt River Project Agricultural Improvement & Power District By Laura F. Raffelli, Phoenix, Attorney for Real Party in Interest/Appellee.

## OPINION

BROWN, Judge.

¶ 1 Save Our Valley Association ("SOVA") appeals the superior court's granting of judgment on the pleadings in favor of the Arizona Corporation Commission ("Commission") and Salt River Project ("SRP"). The court determined that SOVA was not entitled to judicial review of the Commission's decision because SOVA did not file an application for *rehearing* pursuant to Arizona Revised Statutes ("A.R.S.") section 40–253 (2001) prior to filing its complaint. SOVA contends that filing an application for rehearing was unnecessary because it filed a request for *reconsideration* pursuant to A.R.S. § 40–360.07(C) (2001). For the reasons that follow, we disagree with SOVA's position and therefore affirm the decision of the superior court.

## BACKGROUND

¶ 2 In October 2004, SRP filed an Application for a Certificate of Environmental Compatibility ("CEC") with the Arizona Power Plant and Transmission Line Siting Committee ("Siting Committee") seeking approval to construct an electrical transmission line. SOVA is a committee of homeowners affected by the transmission line. SOVA appeared before the Siting Committee at public hearings and proposed an alternative route for placement of the transmission line. At the conclusion of the hearings, the Siting Committee granted the CEC along SRP's proposed route.

¶ 3 SOVA then filed a request for review of the CEC pursuant to A.R.S. § 40–360.07(A) (2001). The Commission held oral argument and conducted meetings to consider public comment. According to SOVA, the Commission took no action with respect to SOVA's proposed alternative route. On August 24, 2005, the Commission issued its decision approving the CEC with amendments. The Commission did not accept SOVA's proposed route. On September 22, 2005, SOVA filed a request for reconsideration of the Commission's decision pursuant to A.R.S. § 40–360.07(C). Other parties to the proceedings filed applications for rehearing/requests for reconsideration. The Commission held a special meeting on September 28, 2005, but took no action on SOVA's request for reconsideration at that time.

¶ 4 On October 25, 2005, SOVA filed its complaint in the superior court alleging, *inter alia*, the Commission's decision approving the CEC was arbitrary and capricious. The Commission moved for judgment on the pleadings, arguing that SOVA failed to file an application for rehearing within twenty days of the entry of the Commission's decision pursuant to A.R.S. § 40–253. SOVA countered that the filing of its request for reconsideration pursuant to A.R.S. § 40–360.07(C) enabled it to proceed directly to superior court to challenge the Commission's decision. The superior court granted the Commission's motion, ruling as follows:

> Plaintiffs were required to file a timely application for rehearing as a prerequisite to seeking judicial review. They failed to do so. A.R.S. § 40–360 neither expressly nor implicitly displaces the requirements of A.R.S. § 40–253. It simply allows certain specified entities to pursue additional administrative proceedings before the Commission under enumerated circumstances.

(Footnotes omitted.)

¶ 5 SOVA filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 6 A motion for judgment on the pleadings tests the sufficiency of the complaint, and a defendant is entitled to judgment "if the complaint fails to state a claim for relief." *Giles v. Hill Lewis Marce,* 195 Ariz. 358, 359, ¶ 2, 988 P.2d 143, 144 (App.1999). In reviewing a judgment on the pleadings, we accept as true the factual allegations of the complaint, but review the trial court's legal con-

clusions de novo. *Mobile Cmty. Council for Progress, Inc. v. Brock,* 211 Ariz. 196, 198, ¶ 5, 119 P.3d 463, 465 (App.2005).

¶ 7 "It has long been held that the right to appeal from any ruling including an administrative decision exists only by force of statute and is limited by the terms of the statute." *Guminski v. Ariz. State Veterinary Med. Examining Bd.,* 201 Ariz. 180, 182, ¶ 8, 33 P.3d 514, 516 (App.2001). In this appeal, we analyze several statutory provisions governing review of line-siting decisions to determine whether the filing of an application for rehearing with the Commission is a prerequisite to seeking judicial review.

## I. Statutory Framework

¶ 8 A public utility desiring to construct a transmission line must file an application for a CEC. A.R.S. § 40–360.03 (2001). The Siting Committee conducts a hearing on the application. A.R.S. § 40–360.04 (2001). In approving or denying the application, the Siting Committee must consider the statutory environmental factors identified in A.R.S. § 40–360.06 (2001).

¶ 9 Within fifteen days of the Siting Committee's decision, any party to the certification proceeding before the Siting Committee may request a review by the Commission. A.R.S. § 40–360.07(A). If such a request is made, the Commission reviews the CEC based on the existing record, although it may request additional oral argument or briefing. A.R.S. § 40–360.07(B). The Commission may confirm, deny, or modify the CEC. *Id.* In reaching its decision, the Commission must consider the statutory environmental factors of § 40–360.06 and must balance, "in the broad public interest, the need for an adequate, economical and reliable supply of electric power with the desire to minimize the effect thereof on the environment and ecology of this state." A.R.S. § 40–360.07(B).

¶ 10 Section 40–253 governs applications for rehearing for Commission matters relating to public service corporations and provides in part:

A. After *any* final order or decision is made by the commission, any party to the action or proceeding or the attorney gener-

al on behalf of the state may apply for a rehearing of *any* matter determined in the action or proceeding and specified in the application for rehearing within twenty days of entry of the order or decision. . . . If the commission does not grant the application within twenty days, it is deemed denied. . . .

B. *No claim arising from any order or decision of the commission shall accrue in any court to any party or the state unless the party or the state makes, before the effective date of the order or decision, application to the commission for rehearing.*

(Emphasis added.)

¶ 11 Following the Commission's decision on an application for rehearing, whether by written order or by operation of law, any party in interest or the attorney general may commence an action in superior court challenging the order or decision. A.R.S. § 40–254(A) (2001). The action must be filed within "thirty days after a *rehearing* is denied or granted." *Id.* (emphasis added). Only those grounds contained in the application for rehearing may be raised on appeal to the superior court. A.R.S. § 40–253(C).

¶ 12 The line-siting statutes do not refer to "application for rehearing" or "rehearing," but they specifically address judicial review, providing as follows: "Subject to the rights to judicial review recognized in §§ 40–254 and 40–360.07, no court in this state has jurisdiction to hear or determine any case or controversy concerning any matter which was or could have been determined in a proceeding before the committee or the commission under this article." A.R.S. § 40–360.11 (2001). Section 40–360.07(C) provides an opportunity for the filing of a request for reconsideration:

*The committee or any party to a decision by the commission pursuant to subsection B of this section may request the commission to reconsider its decision within thirty days after the decision is issued. A request for reconsideration made pursuant to this subsection shall set forth the grounds upon which it is based and state the manner in which the party believes the commission unreasonably or unlawfully*

*applied or failed to apply the criteria set forth in § 40-360.06.* The decision of the commission is final with respect to all issues, subject only to judicial review as provided by law in the event of an appeal by a person having a legal right or interest that will be injuriously affected by the decision.

(Emphasis added.)[1]

¶ 13 Following a decision on a request for reconsideration, "[t]he decision of the commission is final ... subject only to judicial review as provided by law." A.R.S. § 40-360.07(C). SOVA argues that filing a request for reconsideration allows a party to proceed directly to superior court, without regard to the rehearing requirement set forth in § 40-253 because § 40-360.07(C) provides an independent avenue for seeking judicial relief. According to the Commission, however, judicial review is authorized only if the challenging party has filed an application for rehearing pursuant to § 40-253.

## II. Statutory Interpretation

¶ 14 In construing statutes, we apply "fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." *Deer Valley Unified Sch. Dist. No. 97 v. Houser,* 214 Ariz. 293, 296, ¶ 8, 152 P.3d 490, 493 (2007) (quoting *Janson ex rel. Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991)). "Statutory interpretation is an issue of law we review *de novo.*" *State Comp. Fund v. Super. Ct.,* 190 Ariz. 371, 374, 948 P.2d 499, 502 (App.1997). We also, however, "accord great weight to an agency's interpretation of a statute." *Phoenix Newspapers, Inc. v. Ariz. Dep't of Econ. Sec.,* 186 Ariz. 446, 448, 924 P.2d 450, 452 (App.1996); *see also Capitol Castings, Inc. v. Ariz. Dep't. of Econ. Sec.,* 171 Ariz. 57, 60, 828 P.2d 781, 784 (App.1992).

■ ¶ 15 We turn first to the language of § 40-253(B): "No claim arising from any order or decision of the commission shall accrue in any court to any party or the state unless the party or the state makes, before the effective date of the order or decision, application to the commission for a rehearing." We find this language clear and unequivocal—a party cannot challenge an order or decision of the Commission in court unless an application for rehearing has been previously filed with the Commission. *See State ex rel. Church v. Ariz. Corp. Comm'n,* 94 Ariz. 107, 111, 382 P.2d 222, 224 (1963) (Section 40-253 "governs the procedure on application for rehearing before the corporation commission. By its terms it contemplates judicial review following rehearing.").

¶ 16 In *Arizona Corporation Commission v. Superior Court,* this court further analyzed the requirements of § 40-253. 21 Ariz. App. 523, 524, 521 P.2d 154, 155 (1974). We noted that the statute identifies those who may file an application for rehearing:

> Although the group is quite large, the tone of the statute is overwhelmingly in the singular; that is, detailed procedures are set out telling each objector how to proceed with its motion. A.R.S. § 40-253(B) states clearly no corporation or person may have a claim based on the provisions of an order unless that corporation or person makes a timely application for a rehearing.

*Id.*

■ ¶ 17 The purpose of the rehearing requirement is to give the Commission the opportunity to correct its own errors before a party seeks judicial relief. *See Church,* 94 Ariz. at 110, 382 P.2d at 224; *Cogent Pub. Serv., Inc. v. Ariz. Corp. Comm'n,* 142 Ariz. 52, 54, 688 P.2d 698, 700 (App.1984). It "is an expression of the doctrine of the exhaustion of administrative remedies." *Church,* 94 Ariz. at 110, 382 P.2d at 224. "[A] party's failure to 'scrupulously' follow the statutory procedures established for administrative remedies deprives the superior court of jurisdiction to consider the claim for relief." *Stapert v. Ariz. Bd. of Psychologist Exam'rs,*

1. The italicized portion of A.R.S. § 40-360.07(C) quoted above was added by the state legislature in 1996. 1996 Ariz. Sess. Laws, ch. 168, § 2.

210 Ariz. 177, 179, ¶ 8, 108 P.3d 956, 958 (App.2005) (Judicial relief was barred based on psychologist's failure to timely follow statutory procedures.); *see also Ariz. Corp. Comm'n,* 21 Ariz.App. at 525, 521 P.2d at 156 (Trial court had no jurisdiction to hear complaint challenging commission's decision because motion for rehearing was not timely filed with the commission.).

¶ 18 SOVA argues that § 40–253 does not apply to the line-siting statutes. SOVA provides a number of reasons in support of its argument, which we summarize as follows: 1) the line-siting statutes are completely self-contained; 2) §§ 40–253 and 40–360.07(C) have unique purposes, indicating that the legislature intended the line-siting provisions to stand alone; and 3) the language of §§ 40–360.07(C) and 40–360.11 provide for independent judicial review. We address each of SOVA's arguments in turn by examining the language of the statutes at issue.

## A. Article 6.2—Line–Siting Statutes

¶ 19 Although the rehearing and reconsideration provisions are found in different articles within Chapter 2 of Title 40, their mere placement in separate articles does not mean they stand alone.[2] "Statutes are to be construed as a whole, and related provisions in pari materia are to be harmonized if possible[.]" *Church,* 94 Ariz. at 110–11, 382 P.2d at 224. Article 6.2, which contains the line-siting statutes, is one of twelve articles located in Chapter 2. Article 3 relates to "Investigations, Hearings and Appeals," and applies to all of the articles. To conclude otherwise would render Article 3 meaningless. *See, e.g., Guzman v. Guzman,* 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App.1993) ("A statute is to be given such an effect that no clause,

sentence or word is rendered superfluous, void, contradictory or insignificant."). Section 40–253, located in Article 3, provides that a party may not challenge "any order or decision of the commission" without having previously filed an application for rehearing. Nothing in Article 3 suggests that its application is limited to fewer than all of the articles in Chapter 2.[3]

¶ 20 Similarly, nothing in the language of the line-siting statutes indicates the legislature intended that they be self-contained. To the contrary, Article 6.2 does not stand alone because it explicitly refers to § 40–254, which governs judicial review of Commission decisions. *See* A.R.S. § 40–360.11. Section 40–254(A) defines the time period for challenging a Commission decision: "within thirty days after a *rehearing* is denied or granted." (Emphasis added.) It makes no mention of challenging a decision after a request for *reconsideration.*

¶ 21 Section 40–254 must be read in conjunction with § 40–253 because § 40–253 is the only section in Chapter 2 that sets forth the precise procedures to be followed in connection with an application for *rehearing. See Ariz. Corp. Comm'n,* 21 Ariz.App. at 524–25, 521 P.2d at 155–56. Without § 40–253, a party is left guessing what procedures it should follow in order to properly file an application for rehearing and thereby preserve its right to seek judicial review.

¶ 22 SOVA also argues that § 40–360.07 is controlling because it is a specific statute and § 40–253 is a general statute. Under the principles of statutory construction, specific statutes control general statutes. *Mercy Healthcare Ariz., Inc. v. Ariz. Health Care Cost Containment Sys.,* 181 Ariz. 95, 100, 887 P.2d 625, 630 (App.1994). Although § 40–

---

2. The statutes at issue are found in A.R.S. Title 40 (Public Utilities and Carriers). Chapter 2 of Title 40 (Public Service Corporations Generally) has twelve articles, including Article 3 (Investigations, Hearings and Appeals) and Article 6.2 (Power Plant and Transmission Line Siting Committee). Provisions relating to "rehearing" are in Article 3 while the provision relating to "reconsideration" is in Article 6.2.

3. For example, orders or decisions arising under Article 4 (Certificates of Convenience and Neces-

sity and Franchises) and Article 7 (Rates and Rate Schedules) are subject to the requirements of Article 3. *See Paradise Valley Water Co. v. Ariz. Corp. Comm'n,* 92 Ariz. 391, 393, 377 P.2d 768, 769 (1963) (Water company filed timely petition for rehearing from denial of application for certificate of convenience and necessity.); *Ariz. Corp. Comm'n,* 21 Ariz.App. at 524, 521 P.2d at 155 (Gas company filed petition for rehearing following commission's decision on rate application.).

360.07 is specific to siting decisions, it does not provide a specific manner of judicial review to control the general provisions for review of a Commission decision. As acknowledged by SOVA, the applicable scheme for judicial review appears in § 40–254. Thus, the line-siting statutes are not self-contained, and any decision or order relating thereto falls within the procedural requirements of §§ 40–253 and 40–254.

## B. Unique Purposes

¶ 23 As noted by SOVA and as the superior court correctly determined, the differences between § 40–253 and § 40–360.07(C) demonstrate that the statutes serve different purposes.[4] Section 40–360.07(C) authorizes the Siting Committee, as well as any party, to request that the Commission reconsider its siting decision, but does not permit the attorney general on behalf of the state to do so. In contrast, § 40–253(A) authorizes the attorney general as well as any party to file an application for rehearing, but does not offer the Siting Committee that opportunity. In addition, a request for reconsideration focuses on the manner in which the Commission applied the environmental factors of § 40–360.06, whereas an application for rehearing is not so limited. When an application for rehearing is granted, the statute contemplates that the commission will conduct an actual hearing, whereas a request for reconsideration does not. See A.R.S. §§ 40–253(A), –360.07. Section 40–253(A) provides a

twenty-day time limit for filing an application for rehearing while § 40–360.07(C) provides thirty days for filing a request for reconsideration.[5] Finally, § 40–253 provides for denial by operation of law, but § 40–360.07(C) contains no such provision.

¶ 24 These differences establish two separate and distinct administrative remedies for requesting that the Commission re-address a line-siting issue previously presented to it. The statutes serve different purposes. SOVA, however, in its interpretation of § 40–254, would have us ignore the unique statutory purposes and construe the words "reconsideration" and "rehearing" as interchangeable. We decline to interpret the statute in this manner. See Bigelsen v. Ariz. State Bd. of Med. Exam'rs, 175 Ariz. 86, 91, 853 P.2d 1133, 1138 (App.1993) (citing Bd. of Regents v. Pub. Safety Ret. Fund Manager, 160 Ariz. 150, 157, 771 P.2d 880, 887 (App.1989) (when legislature specifically uses a term in certain places within statute and excludes it from another place, courts do not read the term into the section from which it was excluded)). Therefore, only after the filing of an application for rehearing is a party statutorily permitted to file an action in superior court. The filing of a request for reconsideration, by itself, provides no such avenue.[6]

## C. No Right to Independent Judicial Review

¶ 25 As noted above, supra ¶ 15, § 40–253(C) is clear in stating that an application

---

**4.** In its order of dismissal, the trial court stated: "Much as post-judgment motions for new trial and motions for reconsideration in the civil arena serve different purposes and have vastly different consequences viz. appeal, requests for rehearing and requests for reconsideration in the public service corporation realm appear, by statute, to be designed to serve different purposes and clearly have differing effects as to appellate review."

**5.** SOVA contends that the timing differences between the two statutes establish an irreconcilable conflict. To the contrary, § 40–360.07(C) simply provides for an additional review of the Commission's decision before it becomes final, which then triggers the rehearing procedures of § 40–253. Here, SOVA filed its request for reconsideration on September 22, 2005, and filed its complaint in superior court on October 25, 2005. The record is silent whether SOVA's request was denied. We take judicial notice, however, of

Decision No. 68291, dated November 14, 2005, stating that "the Commission granted none of the requests for rehearing and/or reconsideration...." See Ariz. R. Evid. 201. Upon issuance of Decision No. 68291, the line-siting determination by the Commission became final within the meaning of § 40–360.07(C). SOVA could have then filed an application for rehearing. See A.R.S. § 40–253(A) ("[a]fter any final order").

**6.** In the civil litigation context, if a party seeks to appeal a decision of the superior court, the filing of a motion for reconsideration does not provide an alternative avenue for filing an appeal; it merely provides a different method of allowing a court to correct its mistakes. See Ariz. R. Civ. P. 7.1(e). The filing of a motion for reconsideration does not change the procedural requirements for filing an appeal, just as the filing of a request for reconsideration with the Commission does not change the procedural requirements for seeking judicial review.

for rehearing is a prerequisite to the filing of a complaint in superior court. We acknowledge, however, that the legislature could have been more precise in drafting some of the language used in § 40–360.07(C), and we therefore look to other factors to determine the legislative intent. *See Wyatt v. Wehmueller,* 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991) (If the legislative intent is not clear from the statute, we consider other factors, such as "the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose.").

¶ 26 Section 40–360.11 recognizes that judicial review under the line-siting statutes is available "in §§ 40–254 and 40–360.07." The reference to § 40–360.07, however, does not manifest an intent by the legislature that a request for reconsideration replaces an application for rehearing. Section 40–360.07(C) provides that following a request for reconsideration, "[t]he decision of the commission is final with respect to all issues, subject only to judicial review as provided by law." SOVA contends that a party may then seek judicial review without filing an application for rehearing. We disagree.

¶ 27 The statute refers to a decision becoming "final with respect to all issues." The finality language is expressly subject, however, to the right of judicial review "as provided by law." The only laws reasonably applicable to this clause are §§ 40–253 and 40–254.[7] These provisions dictate what a party must do to seek judicial review of any Commission decision. Accordingly, a decision of the Commission following a request for reconsideration is final, but the right of judicial review must be exercised "as provided by law." A.R.S. § 40–360.07(C).

¶ 28 The legislative history relating to § 40–360.07(C) supports our conclusion that "as provided by law" means compliance with §§ 40–253 and 40–254. The line-siting statutes were adopted in 1971. In 1996, the legislature amended § 40–360.07(C). Based upon the language of the statute and the legislative history, the purpose of the amendment was to: 1) provide the Commission with the option of denying a CEC, instead of simply confirming or modifying; 2) provide the Siting Committee or any other party to a decision of the Commission the right to file a request for reconsideration; and 3) set forth the procedure for filing a request for reconsideration. *See* Final Revised Fact Sheet for S.B. 1261, 42d Leg., 2d Reg. Sess. at 2 (Ariz.1996).

¶ 29 The third sentence of § 40–360.07(C), providing for judicial review "as provided by law," has been in place since 1971. Between 1971 and 1996, the only route for seeking judicial review of a line-siting decision was by filing an application for rehearing pursuant to § 40–253. *See Gen. Cable Corp. v. Ariz. Corp. Comm'n,* 27 Ariz.App. 386, 388, 555 P.2d 355, 357 (1976) (failure to file application for rehearing precludes challenge to commission order). We presume that the legislature knew of the procedural requirements for seeking judicial review when it adopted the 1996 amendment adding the ability to file a request for reconsideration. *See Daou v. Harris,* 139 Ariz. 353, 357, 678 P.2d 934, 938 (1984) ("We presume that the legislature ... knows the existing laws" when it enacts or modifies a statute.); *Ariz. Corp. Comm'n,* 21 Ariz.App. at 525, 521 P.2d at 156 ("We presume the Legislature has known of this change, but has not chosen to include this in the statutes in question.").

¶ 30 Nothing in the language of the 1996 amendment or the legislative history relating to it supports the notion that the amendment created another route for judicial review. It simply created another opportunity for *administrative* review of a Commission decision under specified circumstances. Conspicuously absent from the 1996 amendment are two important provisions. First, the legislature did not establish any time frame for ruling on

---

7. In its reply brief, SOVA suggests it was entitled to seek judicial review of the Commission's decision pursuant to the Administrative Review Act. However, the Arizona Administrative Review Act, A.R.S. §§ 12–901 to –914 (2003) does not apply because §§ 40–253 and 40–254, providing specific procedures for judicial review, are applicable to line-siting decisions. *See* A.R.S. § 12–902(A)(1); *see also Sarwark v. Thorneycroft,* 123 Ariz. 1, 4, 596 P.2d 1173, 1176 (App.1979) (when a specific statute exists that authorizes judicial review, the Administrative Review Act is not applicable).

a request for reconsideration. Thus, if a request for reconsideration were a prerequisite to judicial review, the Commission could forestall a party's ability to seek review simply by refusing to issue a ruling. By contrast, § 40–253 provides for denial by operation of law if the application for rehearing is not granted within twenty days. Second, the legislature did not establish any time frame for filing an appeal from a denial of a request for reconsideration, whereas § 40–254 establishes a thirty-day time period for seeking judicial review. Based upon these omissions from the language of § 40–360.07(C), we cannot conclude that the legislature intended the filing of a request for reconsideration to replace the requirement that a party file an application for rehearing as a prerequisite to seeking judicial review. *See Stapert*, 210 Ariz. at 181, ¶ 19, 108 P.3d at 960 (concluding that legislature did not intend to include a good-cause exception for untimely motions for review or rehearing).[8]

### III.  Failure to Exhaust Administrative Remedies

■ ¶ 31 SOVA contends that a party should not be required to exhaust administrative remedies when such an effort would be futile, relying upon *Moulton v. Napolitano*, 205 Ariz. 506, 73 P.3d 637 (App.2003). Generally, a party may not seek judicial review until the prescribed administrative remedies have been exhausted, unless that effort would be futile. *Id.* at 511, ¶ 9, 513, ¶ 18, 73 P.3d at 642, 644. However, "administrative action cannot be deemed futile if the agency

---

8. We note that some parties in the proceedings before the Commission filed joint requests for reconsideration/applications for rehearing to cover their bases, indicating at least some confusion as to the nature of these statutes. If the procedures or purposes of a request for reconsideration need to be further clarified beyond the conclusions we reach in this decision, we defer that task to the legislature.

9. SOVA fails to acknowledge that it was not required to file a request for reconsideration. It could have proceeded directly with the filing of an application for rehearing or it could have combined the two filings, as did other parties in these proceedings before the Commission. SOVA also fails to acknowledge that it acted prematurely in its efforts to seek judicial review.

has the power to provide some relief." *Id.* at 514, ¶ 24, 73 P.3d at 645.

¶ 32 SOVA questions why it would be required to file an application for rehearing when its alternative transmission line route had already been rejected twice by the Commission.[9] Stated differently, SOVA contends that it would have been futile to file an application for rehearing because it already knew what the outcome would be. SOVA has not directed us to any authority, and our research has revealed none, providing that a party can ignore a statutory procedure simply because it believes a board or commission will not change its prior decision. Here, the Commission had the power to provide relief to SOVA; therefore, it was incumbent upon SOVA to apply for such relief, even if it believed the result would not change.

### CONCLUSION

■ ¶ 33 We hold that the statutory provision allowing the filing of a request for reconsideration under A.R.S. § 40–360.07(C) has not explicitly or implicitly replaced the requirement under A.R.S. § 40–253 to file an application for rehearing prior to filing an action for review in the superior court. Because SOVA did not file an application for rehearing with the Commission, it did not comply with the statutory prerequisite for judicial review and was therefore precluded from bringing this action. Accordingly, we affirm the decision of the superior court and deny SOVA's request for attorney's fees and costs on appeal.

As noted in *supra*, footnote 6, SOVA filed its complaint in superior court before the Commission had taken any action on its request for reconsideration. The complaint alleges that "there was absolutely no discussion held, nor action of any kind taken, regarding the SOVA request for reconsideration or the SOVA proposed route." Thus, SOVA's alternative route request was denied only once by the Commission. Assuming the validity of SOVA's argument that a request for reconsideration allowed it to proceed directly to superior court, SOVA failed to exhaust its administrative remedies because its request for reconsideration had not been addressed by the Commission when the complaint was filed in superior court.

CONCURRING: PHILIP HALL, Presiding Judge and ANN A. SCOTT TIMMER, Judge.