NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BEST OF EUROPE ADULT HOME CARE LLC,
*Appellant,*

*v.*

ARIZONA DEPARTMENT OF HEALTH SERVICES,
*Appellee.*

No. 1 CA-CV 15-0439
FILED 1-12-2017

Appeal from the Superior Court in Maricopa County
No. LC2015-000011-001
The Honorable Crane McClennen, Judge (Retired)

**AFFIRMED**

COUNSEL

Milligan Lawless P.C., Phoenix
By John A. Conley, Bryan S. Bailey
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Paula S. Bickett, Patricia C. La Magna, Jo-Ann Handy
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Acting Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Mark R. Moran[1] joined.

---

**T H U M M A**, Judge:

¶1 Best of Europe Adult Home Care, LLC, appeals from the superior court's dismissal of its appeal of a Letter and Amended Statement of Deficiencies issued by the Arizona Department of Health Services (Department) for lack of subject-matter jurisdiction. Because Best has shown no reversible error, the dismissal is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2 Best operates a 10-bed assisted living home in Yavapai County. *See* Ariz. Rev. Stat. (A.R.S.) §§ 36-401(A)(8), (9) (2016).[2] At all relevant times, the Department licensed and regulated Best. Best is not licensed to prescribe medicine but, when necessary, assists residents in maintaining their medication regimens. Bayada Home Health Care, Inc., an independent nursing agency, monitors the health of Best's residents, and coordinates with primary care doctors, informing Best of any medication changes.

¶3 In mid-May 2013, a resident at Best's assisted living home died. The resident apparently was taking several anti-coagulation medications and a subsequent autopsy concluded the cause of death appeared to be "severe anemia . . . attributable to hyper-anticoagulation." After receiving a complaint regarding the death, the Department opened an investigation. Approximately 45 days after the death, the Department visited Best's assisted living home. During that inspection, a Bayada nurse provided the Department with a note written two days after the death

---

[1] The Honorable Mark R. Moran, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

claiming she had told Best about a doctor's change order reducing the amount of the resident's anti-coagulation medicine a few days before the death.

¶4        After further investigation, the Department issued a Statement of Deficiencies (SOD) that, as amended, found Best did not comply with two Department rules in connection with the death. Apparently deeming the deficiencies "serious violations of the rules," the Department directed Best to pay a $500 civil penalty and, in an "Enforcement Meeting Notification of Rights," notified Best that if it did not pay the penalty, the Department would send a "legal order." Best was advised that it could request a hearing before the Office of Administrative hearings "regarding any legal order issued by the Department."

¶5        Soon after the issuance of the SOD, the family of the resident who died sued Best, relying in part on the SOD. According to Best, discovery obtained in that suit "conclusively disproved" the findings in the SOD, including contradicting the note the Bayada nurse provided during the Department's visit. Best provided this information to the Department and requested a hearing or a rescission of the SOD. In response, the Department sent Best a December 3, 2014 letter that (1) re-issued the SOD unchanged; (2) informed Best there would be no enforcement action "at this time;" (3) directed Best to send an "acceptable Plan of Correction to the Bureau of Residential Facilities Licensing" (and stated that a failure to do so meant "further action may be taken" and that the SOD would become part of the Department's public file) and (4) imposed no civil penalty. The Department concedes that this December 3, 2014 letter does not constitute any disciplinary action upon Best's license. And the record provided does not suggest any other disciplinary action by the Department against Best's license in this matter.

¶6        Best disputed the SOD's conclusions that it did not comply with two Department rules and did not submit any Plan of Correction. After a subsequent visit to Best's assisted living home, the Department determined that the deficiencies identified in the SOD had been corrected. Best, however, maintains that it never violated the Department's rules as stated in the SOD. Indeed, throughout the investigation, the superior court proceedings and this appeal, Best has disputed the SOD's conclusions.

¶7        On January 9, 2015, Best filed a notice of appeal of the December 3, 2014 letter in superior court under A.R.S. § 12-904, and on January 16, 2015, requested that "the Department set an administrative hearing to review" the December 3, 2014 letter. The Department denied Best's request for administrative review, stating the December 3, 2014 letter is "neither a notice of appealable agency action vesting [Best] with the right to an administrative hearing, nor is it a final administrative decision vesting [Best] with judicial review and/or rehearing or review rights." The Department moved to dismiss the superior court action, arguing, as relevant here, that the December 3, 2014 letter was not an appealable "administrative decision" subject to judicial review, meaning the superior court lacked subject matter jurisdiction. After full briefing and oral argument, the superior court granted the Department's motion to dismiss. This court has jurisdiction over Best's timely appeal of the superior court's decision pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-913,[3] -120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I.      The Superior Court Did Not Err In Granting The Department's Motion To Dismiss For Lack Of Subject Matter Jurisdiction.

¶8        The dispositive jurisdictional issue is whether the December 3, 2014 letter, including the SOD but expressly representing that no enforcement action would be taken, is an appealable administrative decision subject to judicial review. Best argues the superior court erred in granting the Department's motion to dismiss because the December 3, 2014 letter was an appealable "administrative decision" under A.R.S. § 12-901 and, alternatively, that the superior court had "independent" constitutional subject matter jurisdiction "to provide equitable relief to remedy the Department's violation of" Best's "[d]ue [p]rocess rights." These alternative arguments are addressed in turn.

---

[3] Notwithstanding its reference to "the supreme court," A.R.S. § 12-913 "has been construed as also allowing an appeal to the court of appeals, which was created after § 12-913 was enacted." *Svendsen v. Arizona Dept. of Transp., Motor Vehicle Div.*, 234 Ariz. 528, 533 ¶ 13 (App. 2014).

**A.    The December 3, 2014 Letter Was Not An Appealable Administrative Decision Under A.R.S. § 12-901 Subject To Judicial Review.**

¶9    This court reviews de novo the grant of a motion to dismiss for lack of jurisdiction. *Guminski v. Arizona State Veterinary Med. Examining Bd.*, 201 Ariz. 180, 182 ¶ 9 (App. 2001). The superior court has statutory jurisdiction to review appealable administrative decisions. *See* A.R.S. § 12-905(A); 36-446.07(M); *see also Guminski*, 201 Ariz. at 183 ¶ 12. By statute, an "administrative decision" is appealable only when it both: (1) "affects the legal rights, duties or privileges of persons" and (2) "terminates the proceeding before the administrative agency." A.R.S. § 12-901(2); *see also Bolser Enterprises, Inc. v. Arizona Registrar of Contractors*, 213 Ariz. 110, 113 ¶ 14 (App. 2006); *Murphy v. Board of Medical Examiners of State of Arizona*, 190 Ariz. 441, 448-49 (App. 1997).

**1.    The December 3, 2014 Letter Did Not Affect Best's Legal Rights, Duties or Privileges As Required By A.R.S. § 12-901(2).**

¶10    Best argues the December 3, 2014 letter affects its legal rights, duties or privileges because the SOD harms Best's reputation and may be used against it in future disciplinary proceedings, including to increase penalties. At oral argument before this court, Best agreed an alteration of legal status is required for a legal right to be affected. Although arising in a different context, and the parties dispute its application, *Murphy v. Board of Medical Examiners of State of Arizona*, 190 Ariz. 441 (App. 1997) provides the relevant analysis.

¶11    In *Murphy*, the Arizona Board of Medical Examiners issued a "letter of concern" to a doctor, which was public and could be used against the doctor in future disciplinary proceedings. 190 Ariz. at 448. The doctor sought and obtained judicial review of the letter from the superior court. *Id.* at 445. On appeal, however, this court held that the doctor's "allegations of harm are purely speculative and involve no property rights triggering due process concerns," vacating the superior court's decision because the letter was not a final administrative decision subject to judicial review. *Id.* at 448-49.

¶12    Best argues *Murphy* is distinguishable because the SOD exposes Best to "stiffer fines in the future." However, as with the December 3, 2014 letter in this case, the letter in *Murphy* was a public document that expressly "'may be used in future disciplinary actions against'" the subject of the investigation. *Id.* at 448 (quoting A.R.S. § 32-1451(K) (1997)). Just as

the SOD is non-disciplinary and advises Best it must correct the deficiencies "or further action may be taken," the letter in *Murphy* was "a nondisciplinary advisory letter to notify the physician that . . . continuation of the activities which led to the information being submitted to the board may result in action against the physician's license." *Id.* (quoting A.R.S. § 32-1401(14) (1997)). Notwithstanding Best's arguments to the contrary, the analysis in *Murphy* applies here.

¶13        Best also argues *F.C.C. v. Fox Television Stations, Inc.*, 132 S. Ct. 2307 (2012), shows the December 3, 2014 letter is an appealable "administrative decision" under A.R.S. § 12-901(2). *Fox*, however, did not address whether agency action was appealable under A.R.S. § 12-901(2). Indeed, Best concedes that *Fox* "decided the case on due process grounds alone."

¶14        *Fox* held that the Federal Communications Commission (FCC) violated the due process rights of two television networks by failing to provide proper notice of a change in enforcement policies. *Id.* at 2320. Although stating the lack of a sanction did not moot the question, *id.*, *Fox* did not decide whether the FCC's 93-page order constituted final agency action. Rather, *Fox* decided whether the FCC's enforcement policies were unconstitutionally vague, thereby failing to provide due process notice, deciding the issue with "rigorous adherence to [the] requirements" of due process because speech was involved. *Id.* at 2317. *Fox* did not hold that possible collateral impact of agency action always implicates due process. Moreover, Best conceded at oral argument before this court that no case applying *Fox* has construed it in the way Best urges here. Accordingly, Best has not shown that *Fox* alters the analysis in *Murphy* of what constitutes an appealable "administrative decision" under A.R.S. § 12-901(2).

¶15        Best's reliance on *Comeau v. Arizona State Bd. of Dental Examiners*, 196 Ariz. 102 (App. 1999) similarly is unavailing. In *Comeau*, a regulatory agency censured a dentist after an informal investigative interview. In addition to the censure, the dentist was placed on probation and ordered to take classes. *Id.* at 106 ¶ 15. Unlike the SOD here, the censure was discipline taken against the dentist's license, was enumerated in the relevant statute as a disciplinary action and was a final order subject to judicial review by statute. *See* A.R.S. § 32-1263.01(A)(3); (C)-(D) (1999). There is no comparable discipline here.

¶16        Although the Department had the authority to "censure" an assisted living facility manager, A.R.S. § 36-446.07(A), it did not do so here. Instead, as authorized by A.R.S. § 36-425(G), the Department provided Best

6

"an opportunity to correct deficiencies" by submitting a Plan of Correction before any disciplinary action was taken (and no such action has been taken to date). Given these statutory directives, censure is not synonymous with the Department's actions here. For these reasons, *Comeau* is distinguishable.

¶17        Although they are not identical, the similarities between a letter of concern and the December 3, 2014 letter here (including the SOD) mean the *Murphy* analysis applies. The December 3, 2014 letter, like the letter of concern in *Murphy*, does not affect the legal rights, duties or privileges of Best. As such, Best has not shown the December 3, 2014 letter meets the first requirement of A.R.S. § 12-901(2), meaning that letter (including the SOD) is not a final administrative action.

### 2.    The December 3, 2014 Letter Did Not Terminate The Proceedings Before The Department As Required By A.R.S. § 12-901(2).

¶18        Best argues that, under *Bolser Enterprises, Inc. v. Registrar of Contractors*, 213 Ariz. 110 (App. 2006), the December 3, 2014 letter terminated the proceedings before the Department. *Bolser*, however, involved the revocation of a license to do business, which the court found terminated the administrative proceedings. 213 Ariz. at 113 ¶ 14. Here, the December 3, 2014 letter took no comparable action and, indeed, informed Best there would be no enforcement action "at this time." The December 3, 2014 letter did direct Best to send a Plan of Correction, adding that a failure to do so meant "further action may be taken." But although Best did not provide such a plan, no further action has been taken at this time. On this record, unlike in *Bolser*, the December 3, 2014 letter did not terminate the proceedings before the Department.[4] For this additional reason, the

---

[4] Similarly, Best's reliance on *Sackett v. E.P.A.*, 132 S. Ct. 1367 (2012), in its reply brief on appeal does not alter the result. *Sackett* involved a challenge to an administrative order requiring parties "immediately to restore [certain real] property pursuant to an [agency] work plan." *Id.* at 1369. Although akin to the agency action in *Bolser*, Best has not shown how the compliance order in *Sackett* is comparable to the December 3, 2014 letter here.

superior court properly concluded the December 3, 2014 letter was not an appealable administrative decision action under A.R.S. § 12-901(2).[5]

### B. Best Has Not Shown The Superior Court Had "Independent Constitutional Subject Matter Jurisdiction" To Review The December 3, 2014 Letter.

¶19 Best argues the superior court had independent constitutional subject-matter jurisdiction to "remedy the Department's violation of [Best's] [d]ue [p]rocess rights."[6] Best claims *Fox* "confer[s] constitutional subject matter jurisdiction upon the court." But *Fox* does no such thing. Instead, *Fox* rejected the government's argument that a due process challenge to a regulation involving television broadcasting of indecent material was "moot" based on assurances that the government would forgo consideration of prior broadcasts. 132 S. Ct. at 2318. The court in *Fox* exercised jurisdiction under the Federal Administrative Procedure Act, *F.C.C. v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1810 (2009), not "independent constitutional subject matter jurisdiction" claimed by Best here. Indeed, Best has cited (and this court has found) no case applying *Fox* as providing independent constitutional subject matter jurisdiction for courts to consider non-final agency action.

¶20 Nor has Best shown that, unless Arizona's Administrative Review Act (ARA) "clearly and unambiguously" divests the superior court of jurisdiction, courts have jurisdiction to consider all non-final agency action. To the contrary, "[t]he superior court's jurisdiction pursuant to the ARA, A.R.S. §§ 12-901 to -914 'exists only by force of statute and is limited by the terms of the statute.'" *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 594 ¶ 13 (App. 2009) (quoting *Guminski v. Arizona State Veterinary Med. Examining Bd.*, 201 Ariz. 180, 184 ¶ 8 (App. 2001)). Best has not shown that *Fox* or Best's due process claim would provide an independent basis for the superior court to exercise jurisdiction over Best's challenge to the December 3, 2014 letter. Accordingly, the superior court properly dismissed Best's

---

[5] Given this conclusion, this court does not address the parties' arguments regarding whether Best was required to exhaust administrative remedies before seeking judicial review.

[6] Best did not assert independent constitutional jurisdiction in its notice of appeal to the superior court. Best did, however, make such an assertion in the response to the Department's motion to dismiss, thereby preserving the issue for appellate review.

appeal and, as a result, this court lacks jurisdiction to address the parties' arguments regarding the merits of the December 3, 2014 letter.

## CONCLUSION

**¶21**        The superior court's dismissal is affirmed. Because Best is not the prevailing party, its request for attorneys' fees on appeal pursuant to A.R.S. § 12-348 is denied.



AMY M. WOOD • Clerk of the Court
FILED:   AA